**Margie IZARD, as personal representative of the Estate of Roger Keith Gillin, and as Guardian of Ryan Keith Gillin, a minor, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV–88–377–A.**

United States District Court, W.D. Oklahoma.

May 15, 1989.

---

John D. Sullivan, Holloway, Dobson, Hudson & Bachman, Oklahoma City, Okl., for plaintiff.

William S. Price, U.S. Atty., Robert A. Bradford, Wm. Lee Borden, Jr., and Vicki Zemp Behenna, Asst. U.S. Attys., Oklahoma City, Okl., for the U.S.

## ORDER

ALLEY, District Judge.

Before the Court in this case is defendant United States of America's motion for summary judgment, to which plaintiff Izard has responded.

Plaintiff brings this action under the Federal Tort Claims Act as personal representative of the estate of Roger Keith Gillin, decedent, and as guardian of Ryan Keith Gillin, a minor child of decedent. Frost & Keeling Associates, Inc., was hired by defendant as an independent contractor to install a 1000 ton hydraulic press in Building 3001 at Tinker Air Force Base. Roger Gillin, an employee of Frost & Keeling, was assigned to assist in the installation of the press. While so doing on July 16, 1985, Gillin fell from a ladder provided for his use by defendant. The injuries sustained in the fall resulted in his death shortly thereafter. Plaintiff alleges that defendant was negligent in the design and construction of the ladder, and that defendant breached a duty to Gillin to provide a reasonably safe work premises.

Defendant seeks summary judgment on the basis that the United States was Gillin's principal employer, and thus immune from suit under 85 O.S. 12(i), which provides that worker's compensation benefits are an exclusive remedy against a principal employer. The tests for establishing principal employer immunity were set forth in *Murphy v. Chickasha Mobile Homes, Inc.,* 611 P.2d 243 (Okla.1980). The hirer of an independent contractor is the principal employer of an employee of the contractor who is injured on the job, and is thus immune from tort liability for the injury, if either: (1) the task being performed by the employee injured was a necessary and integral part of the hirer's day-to-day business operations, or (2) the task is within the range of activities customarily carried out by one in the hirer's line of business. *Murphy,* 611 P.2d at 244. A task performed by an independent contractor is a "necessary and integral" part of the hirer's operations within the meaning of test (1) when it is either directly associated with the day-to-day activities carried on by the hirer's line of trade, industry, or business, or when it would customarily be done in that line of business. *Id.* at 248. If the contractor, however independent he may be, is merely a medium through whom the hirer is pursuing the day-to-day activity of his own business, then principal employer status is created by operation of law. *Id.* at 244–245.

The United States has been held to be entitled to principal employer immunity when the applicable test is satisfied. *Griffin v. United States*, 644 F.2d 846, 847 (10th Cir.1981). In *Griffin*, the United States, through the General Services Administration (GSA), hired a contract mover to move government office furniture. An employee of the contractor was injured on the job. The court held that the task being performed by the injured worker, moving office furniture, was an integral part of GSA's business, and that the United States was therefore immune under state workers compensation law from tort liability to the injured worker. *Id.* at 848.

In the present case, there is overwhelming evidence that the task being performed by Gillin, installation of the hydraulic press, was a necessary and integral part of defendant's day-to-day business operations, and that Frost & Keeling was merely the medium through whom defendant installed the press. The mission of the Plant Management Division (MAD) of the Directorate of Maintenance (MA) of the Oklahoma City Air Logistics Center at Tinker AFB is to accomplish the installation of industrial production and tooling equipment for use by other divisions, such as the Accessories Division (MAT). AFLC Reg. 23–42, Defendant's Exhibit E. For this purpose MAD maintains a full staff of engineers, millwrights, electricians, and other tradesmen. MAD installs industrial equipment on a frequent and regular basis, both through its own in-house employees, and through independent contractors. This is evidenced by the fact that the Division is currently planning installation of 121 pieces of new equipment, approximately 74 of which will be installed by MAD employees, and 47 by independent contractors. Defendant's brief, p. 5, ¶ 18–19. Thus, installation of industrial equipment, whether through its own employees or through independent contractors, is a day-to-day business operation of defendant. Frost & Keeling was merely one of the independent contractors used by defendant to accomplish its business operations.

Further evidence that defendant was Gillin's principal employer is found in the fact that MAD exercised a high degree of control over the work accomplished by Frost & Keeling, Gillin's immediate employer. MAD engineering personnel supplied Frost & Keeling with detailed drawings and specifications on how to install the press, which Frost & Keeling closely followed. Defendant's brief, p. 10, ¶ 40. Frost & Keeling was not free to install the press as it saw fit, but was bound by its contract to install it precisely as directed. Such a high degree of control is more consistent with a master-servant relationship than with an employer-independent contractor relationship. Plaintiff's argument in her response brief that defendant did not direct, control, or supervise the installation of the press is not well taken. Under their contract, defendant had both the right to control, and exercised actual control, over the work performed by decedent's employer.

Plaintiff also argues that installation of heavy equipment is not within the realm of activities performed by the Accessories Division at Tinker AFB. In support plaintiff quotes the deposition testimony of Accessories Division personnel that aircraft sheet metal workers did not install such equipment. Plaintiff fails to realize, however, that the Assessories Division is not all of Tinker AFB, and that industrial equipment installation is within the realm of activities of the Plant Management Division (MAD).

For the above stated reasons, the Court finds that the United States was Gillin's principal employer within the meaning of 85 O.S. 12(i), and is therefore immune from suit under the Federal Tort Claims Act. With respect to this finding, reasonable jurors could not disagree. Because there is no genuine issue of material fact, defendant is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Defendant's motion for summary judgment is hereby GRANTED.

It is so ordered.