Margie IZARD, as personal representative of the Estate of Roger Keith Gillin, and as guardian of Ryan Keith Gillin, a minor, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 89–6211.

United States Court of Appeals, Tenth Circuit.

Oct. 11, 1991.

Elizabeth Bradford Dunning of Holloway, Dobson, Hudson & Bachman, Oklahoma City, Okl. (Gary C. Bachman and John D. Sullivan on the brief), for plaintiff-appellant.

Vicki Zemp Behenna, Asst. U.S. Atty., W.D. Oklahoma (Robert E. Mydans, U.S. Atty., and Robert A. Bradford, Asst. U.S. Atty., W.D. Oklahoma, with her on the brief), for defendant-appellee.

Before McKAY, Chief Judge, LOGAN and ANDERSON, Circuit Judges.

McKAY, Chief Judge.

Plaintiff Margie Izard, as personal representative of the estate of Roger Keith Gillin (decedent) and as guardian of Ryan Keith Gillin, a minor child of decedent, brought this action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80 (FTCA), against the United States. The sole issue presented on appeal is whether the United States was decedent's statutory employer under the Oklahoma Workers' Compensation Act, Okla.Stat. tit. 85 § 1, *et seq.*, which is an exclusive remedy. The district court concluded that the United States was the statutory employer and granted summary judgment for the United States. *Izard v. United States*, 711 F.Supp. 1045, 1047 (W.D.Okla.1989).

This court reviews a grant of summary judgment under the same standard applied by the trial court. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The factual record must be viewed in the light most favorable to the party opposing summary judgment. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir.1988).

The facts pertinent to this appeal, while controverted in certain particulars, are essentially undisputed. Briefly, decedent suffered fatal injuries as a result of a fall

from a ladder provided by the United States at Tinker Air Force Base in Oklahoma. At the time of his death, decedent was employed by Frost & Keeling Associates, Inc. The United States, acting through the Department of the Air Force, had contracted with Frost & Keeling to install a 1,000-ton hydraulic press to be used in connection with the repair, maintenance, modification, and reclamation of the sheet metal components of aircraft. Decedent fell from the ladder while assisting in the installation of the press. Plaintiff's position is that the United States' negligent and defective design of the ladder was the proximate cause of decedent's death.

■ Under the FTCA, the United States is liable only as a private person would be liable in accordance with the law of the place where the act or omission occurred. *See* 28 U.S.C. § 1346(b). Under Oklahoma law, the principal for whom a contractor is performing work is immune from tort liability for injuries suffered by the contractor's employees in the course of that work, if the work performed by the contractor was "necessary and integral" to the principal's operations. *Murphy v. Chickasha Mobile Homes, Inc.,* 611 P.2d 243, 244–45 (Okla.1980). Accordingly, the principal is the statutory employer of the injured employees and is liable to the injured employees only under the Oklahoma Workers' Compensation Act. *Id.* Tasks performed by a contractor are a "necessary and integral" part of a principal's operation when they "[1] are directly associated with the day-to-day activity carried on by the [principal's] line of trade, industry or business or [2] would customarily be done in that line of business." *Id.* at 248.

■ To assist in implementing this two-part standard, the Oklahoma Supreme Court, while this appeal was pending, adopted a three-level analysis crafted by the Louisiana Supreme Court in *Berry v. Holston Well Serv., Inc.,* 488 So.2d 934 (La.1986). *See Bradley v. Clark,* 804 P.2d 425, 427–28 (Okla.1990). Under the Louisiana approach, in order to determine whether a principal is a statutory employer of a contractor's employees, a court must first inquire whether the contract work is specialized or nonspecialized. *Id.* at 428 n. 10 (citing *Berry,* 488 So.2d at 937–39 and *Rowe v. Northwestern Nat'l Ins. Co.,* 471 So.2d 226 (La.1985)). This inquiry takes into consideration whether the level of skill, training, and experience required to perform the work at issue is not ordinarily possessed by workers outside the contract field. *Id.* If the contract work is specialized *per se,* it is not, as a matter of law, part of the principal's trade, business, or occupation. *Id.*

If the contract work is not specialized *per se,* the court must then compare the contract work with the principal's trade, business, or occupation to determine whether the contract work could be considered a part thereof. *Id.* Finally, the court must inquire whether the principal was actually engaged at the time of the injury in the trade, business, or occupation of the hired contractor. *Id.*

■ In this case, the district court applied the Oklahoma law which predated *Bradley* and concluded that the United States was decedent's statutory employer simply because the work performed by Frost & Keeling "was a necessary and integral part of [the United States'] day-to-day business operations." *Izard,* 711 F.Supp. at 1047. At oral argument, neither side was aware of *Bradley.* The threshold question presented is whether *Bradley* should apply retroactively here.

When applying state law, this court must apply a state supreme court's most recent statement of state law. *Robinson v. Volkswagen of Am., Inc.,* 803 F.2d 572, 574 (10th Cir.1986). *Bradley* is the Oklahoma Supreme Court's most recent statement concerning that state's statutory employer defense. Our task is to predict whether the Oklahoma Supreme Court would apply *Bradley* retroactively. *Southwest Forest Indus., Inc. v. Sutton,* 868 F.2d 352, 354 (10th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1320, 108 L.Ed.2d 496 (1990).

The Oklahoma Supreme Court provided no obvious indication in *Bradley* whether it intended the decision to be applied retroactively. Because *Bradley* does not express-

ly require retroactive application beyond that case, Oklahoma law must be examined for further guidance. Under Oklahoma law, the general rule is that an appellate court must apply the law in effect at the time it renders its decision. *Griggs v. Oklahoma ex rel. Okla. Dep't of Transp.,* 702 P.2d 1017, 1022 n. 21 (Okla.1985). The Oklahoma Supreme Court has adopted the three factors from *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), for determining when retroactivity of a decision should be restricted in a noncriminal case involving nonconstitutional questions:

> (1) [A]t the threshold, the [new] decision must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or on an issue of first impression whose decision is not clearly foreshadowed; (2) the court must weigh the merits and demerits of applying the rule retroactively by considering the rule's prior history, its purpose and effect, and whether retroactivity will further or retard its operation; and (3) the court must consider the inequity flowing from retroactive application, including unfairness and hardship to the parties.

*Griggs,* 702 P.2d at 1020.

Applying these factors to this appeal, none of them preclude retroactive application of *Bradley.* First of all, *Bradley* does not even meet the threshold test for nonretroactive application, *i.e.,* establishment of a new principle of law. *Bradley* did not overrule clear past precedent—it did not specifically reverse any prior case—nor did *Bradley* decide an issue of first impression. The Oklahoma Supreme Court, instead, stated in *Bradley* that the approach adopted from Louisiana was "harmonious with our own institutional design fashioned [earlier] in *Murphy*." *Bradley,* 804 P.2d at 428. Because *Bradley* is more a clarification of rather than a change in Oklahoma law, retroactivity is not an issue.

Even if *Bradley* were interpreted as establishing new law, retroactive application would still be proper under the other prongs of *Chevron.* The purpose of *Brad-*

*ley* is to narrow the scope of tort immunity available to the hirers of contractors. This purpose would obviously be furthered by retroactive application of *Bradley.* Similarly, retroactive application of *Bradley* would not necessarily produce an inequitable result in this case. *Bradley*'s stringent definition of a statutory employer works only against the United States, and reversal or vacatur of the district court's decision would not preclude a judgment in favor of the United States on the basis of *Bradley*'s approach to the statutory employer defense after further development of the issue at trial or even by further summary judgment evidence.

■ Because we conclude that *Bradley* is applicable to this case, the next question is who is the principal, *i.e.,* to what entity do we apply *Bradley*'s statutory employer test? Plaintiff insists that the Accessory Division at Tinker, where the hydraulic press was installed and is used, should be treated as the principal, and we should focus on that organization's regular business. According to plaintiff, the evidence in the record indicates that the installation of heavy equipment like a 1,000–ton hydraulic press was not within the realm of activities performed by the Accessory Division. The United States, on the other hand, contends that the Plant Management Division at Tinker is the principal, and the installation of heavy equipment is within the realm of that organization's activities. In support of its position, the United States cites an Air Force regulation which charges the Plant Management Division with the responsibility of installing industrial production equipment and maintaining a work force capable of accomplishing such installation. *See* Defendant's Exhibit F to Motion for Summary Judgment (Rec.Vol.I., Doc. 34).

Both plaintiff and the United States are, for lack of a better description, aiming too low. Where, as here, the United States claims statutory employer status, the proper focus is on the *agency* or *department* of the United States which contracted for the work. *See, e.g., Rivera v. United States Army Corps of Eng'rs,* 891 F.2d 567, 568

(5th Cir.1990) (statutory employer defense in FTCA cases depends on "the missions provided by law of the governmental agency in question"); *Pendley v. United States*, 856 F.2d 699, 702 (4th Cir.1988) (analyzing the Department of the Air Force's status as statutory employer), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1640, 104 L.Ed.2d 155 (1989); *Griffin v. United States*, 644 F.2d 846, 848 (10th Cir.1981) (analyzing General Services Administration's status as a statutory employer); *Nofsinger v. United States*, 727 F.Supp. 586, 588 (D.Kan.1989) (analyzing the Department of the Army's status as a statutory employer). In this case, therefore, the principal is the Department of the Air Force. Furthermore, we are not required to splinter the Department of the Air Force's activities into discrete geographical regions. Our focus is on the connection between the vast activities of the Department of the Air Force at all of its facilities, including Tinker, and the work Frost & Keeling contracted to perform. *See, e.g., Mozeke v. International Paper Co.*, 856 F.2d 722, 727–28 (5th Cir.1988) ("the plain language of *Berry* ... requires that we look at the activities of the [principal] as a whole" rather than the principal's activities at a particular facility).

■ Treating the Department of the Air Force as the principal, the final question is whether the record, at this juncture, permits a judgment in favor of the United States as a matter of law under *Bradley*'s definition of a statutory employer. In our view, the record does not. With respect to the first prong of the *Bradley* analysis, *i.e.,* whether the contract work is specialized or nonspecialized, it is undisputed in the record that employees of the Department of the Air Force, indeed those at Tinker, were fully capable of performing the work Frost & Keeling was hired to perform. *See* Defendant's Exhibit A to Motion for Summary Judgment at p. 3 (Rec.Vol.I, Doc. 34). Therefore, the work performed by Frost & Keeling was not specialized *per se*. *See Mozeke*, 856 F.2d at 725 (under *Berry*, work is not specialized *per se* when principal's own employees are capable of performing the contract work).

However, with respect to the second and third prongs of the *Bradley* analysis, the record is not sufficiently developed to permit resolution of the pertinent questions. As indicated above, the second stage of the *Bradley* analysis requires a comparison of the principal's trade, business, or occupation with the contract work to determine if the latter can be considered part of the principal's trade, business, or occupation. *Bradley*, 804 P.2d at 428 n. 10. The overriding question at this stage of the analysis is "whether [the contract work] is, *in that business*, normally carried on through employees rather than independent contractors." *Id.* (quoting *Berry*, 488 So.2d at 938) (emphasis in original). The third level of the analysis under *Bradley* asks whether the principal, at the time of the injury, was engaged in the business or occupation of the hired contractor. *Id.*

In this case, the record contains information about the functions of the Accessory Division and the Plant Management Division at Tinker. Specifically, the United States submitted a sworn declaration from the chief and deputy chief of the Plant Management Division which states in part that the "[i]nstallation of industrial production equipment, such as the 1,000–ton hydraulic press installed by Frost & Keeling Associates, Inc., is a task customarily carried out by the Plant Management Division (MAD), *either* by its own installation branch *or* through the medium of an independent contractor such as Frost and Keeling Associates, Inc." *See* Exhibit A to Defendant's Motion for Summary Judgment at p. 8 (Rec.Vol.I, Doc. 34). This statement and the remainder of the record, however, do not provide any information regarding whether employees of the Department of the Air Force at Tinker, or elsewhere, *normally* installed 1,000–ton hydraulic presses rather than independent contractors. Nor does the record contain any information regarding whether the Department of the Air Force at Tinker, or elsewhere, was actually engaged in work like the installation of a 1,000–ton hydraulic press at the time decedent was fatally injured.

The United States, as the party asserting the statutory employer defense, bears the burden under *Bradley* of establishing that employees of the Department of the Air Force normally performed and, at the time of decedent's fall, actually were performing the work Frost & Keeling was hired to perform. *Bradley*, 804 P.2d at 427. Obviously, the United States, at the time it moved for summary judgment, was unaware that its status as a statutory employer depended on this information. In any event, the absence of such information in the record before us presents unresolved genuine issues of material fact, and precludes an affirmance of the summary judgment entered in favor of the United States.

Accordingly, the judgment of the district court is REVERSED, and the case is REMANDED for further proceedings. As discussed above, our determination does not necessarily preclude a judgment in favor of the United States on the basis of the statutory employer defense after further development of the record. We speak only to the record as it is now before us.