949 F.2d 401
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 John D. MUSICK, Jr.; A.M. Buder; M.B.-80C Ltd., a Colorado
limited partnership; Colorado Landwest, Ltd., a Colorado
corporation and The Pikeview Venture, a Colorado general
partnership, Plaintiffs-Appellants,
v.
FEDERAL NATIONAL MORTGAGE ASSOCIATION, a corporation, and
Puller Mortgage Associates, Inc., an Indiana
corporation, Defendants-Appellees.
 No. 90-1203.
 United States Court of Appeals, Tenth Circuit.
 Dec. 4, 1991.
 
 1
 Before SEYMOUR and TACHA, Circuit Judges, and CHRISTENSEN, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 CHRISTENSEN, Senior District Judge.
 
 
 4
 Plaintiffs-appellants John D. Musick, Jr., A.M. Buder, M.B.-80C, Ltd., Colorado Landwest, Ltd., and The Pikeview Venture (hereinafter "plaintiffs"), have appealed a judgment of the district court dismissing their complaint against defendants-appellees Federal National Mortgage Association and Puller Mortgage Associates, Inc. (hereinafter "defendants"). The dismissal was on the ground that a stipulation entered into by the same parties in prior state court litigation was ineffectual to establish liability and unworkable and that the complaint in misplaced reliance upon such stipulation failed to state a claim upon which relief could be granted as against a Fed.R.Civ.P. 12(b)(6) motion. Being of the view that the stipulation in question did effectively subsume for the purpose of the pleading some of the issues of the federal action, and that the complaint in view of the stipulation and independently is sufficient to withstand such motion, we reverse.
 
 STATEMENT OF THE CASE AND ITS PROLOGUE
 
 5
 Except as to the meaning of the stipulation, there is little or no dispute concerning the facts; most of the critical ones can be gathered from the complaint itself.
 
 
 6
 Plaintiffs were real estate developers who in 1984 planned the construction of four large apartment complexes with anticipated costs of each running into millions of dollars. These projects were designated respectively Conifer Landing (hereafter "Conifer"), Thornhill Farms, The Landings and Eagle Trace. They were to be developed sequentially and in overlapping time frames beginning with Conifer.
 
 
 7
 In November of 1984, the defendants agreed to provide financing for Conifer, the lead project. As a result of defendants' misrepresentations, plaintiffs lost their entire investment in Conifer and the other projects, as well as guaranteed development fees which defendants allegedly knew plaintiffs would have earned on the other projects.
 
 
 8
 The two basic misrepresentations claimed to have been made in connection with agreed financing of the Conifer project were, first, that the defendants would renegotiate the occupancy level and would allow rental concessions, and, second, that they would "work out" mortgage payments, neither of which they intended to carry out, and that in violation of these representations defendants commenced foreclosure and thus damaged the defendants "through the loss of their investments in the Apartment Projects, and otherwise."
 
 
 9
 The failure of the projects, and particularly of the Conifer project, resulted in litigation in the Denver (state) District Court involving consolidated cases and numerous claims, crossclaims, counterclaims and third-party claims. Prior to trial, all parties other than the present plaintiffs with respect to their crossclaims for fraud and negligent misrepresentation against the present defendants settled their differences, and the claims against the other parties were dismissed.
 
 
 10
 Plaintiffs' claims against the defendants were tried to a jury in the state court action which resulted in a judgment in favor of plaintiffs with respect to the Conifer project only for $1,350,000 actual damages and $5,000,000 exemplary damages. This judgment recently was affirmed by the State Court of Appeals in Musick v. Federal National Mortgage Assn., Civil Action No. 89-CA-0982 (Colo.App.1991).
 
 
 11
 During the early stages of the state court trial, a dispute had arisen between the parties as to whether plaintiffs could recover on the basis of the same alleged misrepresentations for the failure of all four projects or with respect only to Conifer. The problem first arose when appellant Musick, who then appeared pro se, indicated during the voir dire examination of potential jurors that he would seek damages relating not only to Conifer but the other projects as well. Defendants filed a motion in limine in an effort to exclude evidence concerning the other projects. Thereupon, a stipulation was entered into upon the record that recovery in the state court trial would be limited "to any damage that plaintiffs may have incurred with respect to the Conifer Landing project only," in consideration of the further agreement that plaintiffs were not waiving or giving up any claims they might have at a later time with respect to the other projects and "whatever the jury determines with respect to liability in this case will be res judicata in any additional or subsequent cases, which may be brought to Everet [Eagle Trace], Phoenix [The Landings], and Thornhill." R.Vol. I, Tab 3(C) pp. 4-5.
 
 
 12
 The state judge, apparently in keeping with discussions between Musick and defendants' counsel, went on to state that the jury would be given a special verdict form which would contain the elements of the claims as set forth in the "Colorado Jury Instructions," and that with respect to the fraud claim "the first four [elements] will be res judicata," and, with respect to the negligent misrepresentation claim, "the first five elements" would be "res judicata."[1] R. Id. at pp. 6-7.
 
 
 13
 Following the taking of evidence, the state trial court gave the jury two special verdict forms based on the stated elements of the respective claims, without breaking down the inquiries between the two misrepresentations relied upon by plaintiffs and presumably covered by the evidence and the trial court's instructions. One verdict form pertained to the fraudulent misrepresentation claim and one to the negligent misrepresentation claim. Answers were sought as to whether each of the elements of the respective claims had been established by a preponderance of the evidence.
 
 
 14
 To each of the interrogatories thus submitted, the answer of the jury was an unequivocal "yes." The affirmative answers of course did not disclose whether the jury believed that only one or the other, or both misrepresentations were made with the requisite intent, reliance and effect.
 
 
 15
 Without reference to any such specification, the following findings bearing upon the first four elements of the fraudulent representation claim and the first five elements of the negligent misrepresentation claim thus became "res judicata" by the terms of the stipulation. Paraphrasing the verdict with respect to the false representation claim:
 
 
 16
 Defendants made a false representation of a past or present fact which was material and which they knew to be false or were aware that they did not know whether it was true or false, and they did so with the intent that plaintiffs act in reliance thereon.
 
 
 17
 With respect to the negligent misrepresentation claim:
 
 
 18
 Each defendant gave false information to the plaintiffs in the course of a transaction in which defendants had an interest in order to guide plaintiffs in a business transaction; that each defendant negligently communicated such information to plaintiffs with the intent or knowing that the plaintiff would act in reliance upon the information.
 
 
 19
 The issues with reference to the projects other than Conifer left open for further proceedings as to both fraudulent and negligent misrepresentations were
 
 
 20
 whether plaintiffs relied on the representations or false information and whether such reliance caused damage to plaintiffs. With reference to negligent misrepresentation the further issue reserved was whether plaintiffs' reliance was justified.
 
 
 21
 Following entry of judgment on the verdict in the state court, plaintiffs moved for the setting of the same case for determination of damages relating to the additional projects. Defendants objected on the ground, among others, that there having been no order providing for immediate entry of judgment on a portion of the claim adjudicated, that adjudication was res judicata against the right of plaintiffs to pursue their additional claims. The state court rejected this view but ruled that a new action would have to be instituted to pursue the claims concerning the projects other than Conifer. Thereupon, plaintiffs filed in the District Court in and for the City and County of Denver, Colorado, Civil Action No. 89-CV-09259, the complaint with which we are now concerned. That action was removed by defendants from the state court to the United States District Court for the District of Colorado because of diversity of citizenship.
 
 
 22
 In the federal district court defendants interposed a motion to dismiss or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 12 and 56 on the respective grounds that the complaint did not state a claim on which relief can be granted and that there was no genuine issue of material fact regarding plaintiffs' claims, with defendants being entitled to judgment as a matter of law. The plaintiffs moved for partial summary judgment based upon the stipulation at the first trial. Following oral argument on these motions, the trial court declined to give summary judgment to either party but granted defendants' motion to dismiss the complaint, with leave to amend, holding that the stipulation was unworkable--"my judgment is I can't use the stipulation, except ... that it defeats any statute of limitations defense for this lawsuit based on the other projects." R.Vol. II at 29. Plaintiffs declined to amend, and final judgment was entered dismissing the complaint with prejudice. Plaintiffs took this timely appeal, of which we have jurisdiction pursuant to 28 U.S.C. § 1332.
 
 CONTENTIONS OF THE PARTIES
 
 23
 Plaintiffs contend that the district court erred in dismissing the complaint and further maintain that it erred in denying their motion for partial summary judgment "to recognize the effect of the stipulation as to some or all of the issues to come before the court at trial." They argue that the stipulation in the state court was binding for the purposes of the new action and that defendants, willing to take a chance on the outcome of the Conifer elements of the suit, should not be permitted to renege upon their agreement when those elements were not resolved to their satisfaction.
 
 
 24
 Defendants respond that "[t]he issue is whether the record in the prior proceeding--the stipulation together with the verdict forms--is sufficient to establish by collateral estoppel the facts critical to the claim filed in this case." Appellees' Brief at 15. They say that "[a]lthough the verdict forms may have been adequate for the prior proceeding, they clearly were not adequate to form the basis for collateral estoppel or res judicata as to which misrepresentation or false information had been 'found' for the purposes of this case," noting that the state trial judge used the expression res judicata, when she "should have referred to the doctrine of collateral estoppel." Id. at page 18, n. 11.[2] They cite as determinative the clearly established proposition that if a jury's verdict in a prior proceeding could have been based upon either one or the other of alleged misrepresentations it cannot be said that either was actually "found" by the jury, citing the venerable and still respected authorities of De Sollar v. Hanscome, 158 U.S. 216, 221 (1895); Glass v. United States Rubber Co., 382 F.2d 378, 383-84 (10th Cir.1967), and Happy Elevator No. 2 v. Osage Constr. Co., 209 F.2d 459, 461-62 (10th Cir.1954), as well as other more recent cases. They put the question, the issue of reliance and damages having been reserved for the subsequent proceeding, to which of the two possible jury findings of misrepresentation would the additional proof of reliance and damages have to pertain--a question which defendants obviously consider the coup d'etat to plaintiffs' complaint, as apparently did the trial court.
 
 STANDARDS FOR REVIEW
 
 25
 We review de novo the sufficiency of the complaint, accepting its well-pleaded allegations as true and construing them in the light most favorable to the pleader. Zinermon v. Burch, 494 U.S. 113 (1990); Razatos v. Colorado Supreme Court, 746 F.2d 1429 (10th Cir.1984), cert. denied, 471 U.S. 1016 (1985). Dismissal would be proper only if it appears beyond reasonable doubt that the plaintiffs can prove within such allegations no set of facts in support of the claim which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 43 (1957); Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir.1987); Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir.1984); cf. Bryson v. City of Edmond, 905 F.2d 1386, 1390 (10th Cir.1990). This court reviews a grant of summary judgment under the same standard applied by the trial court, Izard v. United States, 1991 WL 201875 (10th Cir.Okl.1991). A declaration of uncontrovertible facts under Rule 56(d), we take it, would invoke the application of an analogous standard.
 
 ANALYSIS AND DISCUSSION
 
 26
 This case at this stage is less about collateral estoppel and ultimate proof upon which defendants' arguments focus, and more about interparty stipulations, res judicata and the sufficiency of a complaint. The trial court denied defendants' motion for summary judgment, and there is no warrant to treat any aspect of possible proof under the expansive scope of Rule 56 to justify that dismissal under Rule 12(c)(6). The district court expressly granted the motion to dismiss, and the final judgment dismissed the complaint with prejudice, affording no opportunity for the development or introduction of proof at the trial or at all. The determinative question, therefore, is whether the complaint, in light of the stipulation--or peradventure even because of it--failed to state a claim on which relief could be granted.
 
 
 27
 It is incontestable here, particularly in view of the decision of the Colorado Court of Appeals affirming the state court judgment, that the matters in the state court that were to be res judicata for purposes of the present proceeding, if connected up by proof of the remaining issues of reliance and resulting damage, were sufficient evidence of liability under Colorado law. The Colorado Court of Appeals, in an opinion not available to the federal trial judge when he dismissed the complaint, held not only that the evidence of liability for the misrepresentations relied upon by plaintiff here was sufficient, but that the causal connection between these and the Conifer failure was adequately established. Musick v. Federal National Mortgage Assn., supra.
 
 
 28
 It may well be that, in the context of the contemplated further proceeding involving damages to the projects other than Conifer, the failure of Conifer itself would sufficiently establish both liability and resulting damage through connecting proof of interrelationship, in which event the stipulated res judicata effect of the verdict and the reservation of the reliance and damage issues could be reconciled on the proof in avoidance of the dilemma posed by the defendants relating to their collateral estoppel approach. Indeed, during oral argument the federal trial judge seemed inclined to so rule until defendants' collateral estoppel argument convinced him otherwise.[3] Plaintiffs have not enhanced the persuasiveness of their position on the proof by only inferentially adopting such reasoning, intimating that they may rely on additional representations as to the Thornhill Farms project and oversimplifying the problem of relating proof of reliance and resulting damages to the generality of the jury's findings on the issue of liability. Thus they argue at page 15 of their principal brief: "Moreover, the stipulation is not unworkable. The jury should simply be instructed that the first four elements of fraud and the first five elements of negligent misrepresentation have been established pursuant to a stipulation of the parties, and that the jury need only address the remaining elements." But this does not detract from their position concerning the sufficiency of the allegations of the complaint to state a claim.
 
 
 29
 It is also possible that ongoing processing and the sharpening of the issues in dispute may throw further light on the practical effect of the stipulation in the context of the trial. Should the stipulation then be found ambiguous so as to permit resort to extrinsic aids, additional evidence and a factual finding might be in order.[4] Other solutions failing, the plaintiffs in any event without reliance on the stipulation except for their authorization to so proceed could introduce evidence as to both liability and resulting damage anew.
 
 
 30
 These are problems of proof which under the circumstances of this case should not have been considered fatal to continued efforts on the part of the plaintiffs to establish their case at trial in the light of the stipulation and within the compass of their complaint. As to the further resolution of these problems of proof, we intend to express no opinion.
 
 
 31
 But there now appears no ambiguity or uncertainty concerning the res judicata effect of the stipulation for the purpose of pleading the elements specifically established thereby. It would be the height of captiousness to say that by pleading the stipulation in this regard, the ultimate facts were not in effect so alleged beyond the mere existence of the stipulation itself. This would improperly fail to give "life and vitality" to the language the parties used to express their agreement. See Tenneco Oil Co. v. Gaffney, 369 F.2d 306, 308 (10th Cir.1966). It would be at variance with the respect accorded stipulations under Colorado law and recognized in our opinions.[5] The stipulation as pleaded and the other independent allegations of the complaint were clearly sufficient to state a claim on which relief can be granted, especially in light of the acceptability of alternative statements authorized by Fed.R.Civ.P. 8(e)(2), and the res judicata doctrine,[6] which the district court in evaluating the complaint should not have shifted into one of collateral estoppel beyond the reserved issues which also were adequately pleaded in the complaint.[7] It is understandable that the able trial judge who so perceptively ruled on the motions for summary judgment lost sight of the detailed allegations of the complaint; counsel for both sides had focused their arguments almost entirely upon the effect of the stipulation itself in relation to the proof that might be required to connect damages to the misrepresentations thereby established.
 
 
 32
 Defendants argue that the benefit of the stipulation to the plaintiffs should be restricted to elimination of any statute of limitations problem on the remaining claims and the bar of the defense of res judicata or collateral estoppel against them. These claimed residuals in light of the dismissal of the complaint with prejudice barring plaintiffs from proceeding at all, is hollow indeed; if the stipulation had not been entered into and the state court had continued to recognize the interrelationship of damages implied by the stipulation itself, plaintiffs' recovery could have been increased by damages pertaining to the additional three projects, and there would have been no obstacle from either limitations or res judicata.[8]
 
 CONCLUSIONS
 
 33
 We affirm the district court's denial of plaintiffs' motion for partial summary judgment and reverse the dismissal of plaintiffs' complaint.
 
 
 34
 REVERSED and REMANDED for further proceedings not inconsistent with this order and judgment.
 
 
 
 *
 A. Sherman Christensen, Senior Judge, United States District Court for the District of Utah, sitting by designation
 
 
 **
 This Order and Judgment has no precedential value and shall not be cited or used by any court within the Tenth Circuit except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 These elements are referred to in the state court record and the briefs before us only in general terms, and unfortunately the state court instructions to the jury are not part of the record, although the jury verdicts are. Understanding of the stipulation requires at least the pertinent text of the "Colorado Jury Instructions" referred to, of which we take judicial notice as follows:
 19:1 FALSE REPRESENTATION--ELEMENTS OF LIABILITY
 In order for the plaintiff, (name), to recover from the defendant, (name), on (his) (her) claim of deceit based on fraud, you must find all of the following have been proved:
 
 
 [1]
 The defendant made a false representation of a past or present fact;
 
 
 [2]
 The fact was material;
 
 
 [3]
 The defendant made the representation knowing it to be false or (he) (she) was aware that (he) (she) did not know whether it was true or false;
 
 
 [4]
 The defendant made the representation with the intent that (the plaintiff) (a group of persons of which the plaintiff was a member) (act) (or) (decide not to act) in reliance on the representation;
 
 
 [5]
 The plaintiff relied on the representation;
 
 
 [6]
 The plaintiff's reliance was justified; and
 
 
 [7]
 This reliance caused damage to the plaintiff
 * * *
 9:3B NEGLIGENT MISREPRESENTATION CAUSING FINANCIAL LOSS IN A BUSINESS TRANSACTION--ELEMENTS OF LIABILITY
 In order for the plaintiff, (name), to recover from the defendant, (name), on (his) (her) claim of negligent misrepresentation, you must find all of the following have been proved:
 
 
 [1]
 The defendant gave false information to the plaintiff;
 
 
 [2]
 The defendant gave such information to the plaintiff in the course of (the defendant's [business] [profession] [employment] (a transaction in which the defendant had a financial interest);
 
 
 [3]
 The defendant gave the information to the plaintiff for the (guidance) (use) of the plaintiff in a business transaction with a person other than the defendant;
 
 
 [4]
 The defendant was negligent in obtaining or communicating the information;
 
 
 [5]
 The defendant gave the information with the intent or knowing that (the plaintiff) (a limited group of persons of which the plaintiff was a member) would (act) (or) (decide not to act) in reliance on the information;
 
 
 [6]
 The plaintiff relied on the information supplied by the defendant; and
 
 
 [7]
 This reliance on the information supplied by the defendant caused damage to the plaintiff
 * * *
 Sections 19:1 and 9:3B, Colorado Jury Instructions--Civil (Colorado Supreme Court Committee on Civil Jury Instructions) (1989).
 
 
 [2]
 In this same footnote defendants assert that counsel for appellants acknowledged before the federal judge that res judicata was not the proper doctrine. Because this reference is out of context and does not portray the full import of the statement which draws a distinction we hereafter refer to, we quote also the remainder of the interchange in context:
 MR. APPEL [for plaintiffs]: And it seems to me that the issue at least is fairly simple. We have a stipulation, no question about that, and the stipulation was intended by the parties and the court to do something ... If you look at pages 5 and 6 of the partial transcript ... Judge Rice took great pains to make very specific what everyone was agreeing to.
 THE COURT: What's specific about the words res judicata?
 MR. APPEL: Well, she may have been incorrect in her legal analysis. It's probably not res judicata. But what I'm referring to, Judge, is that she said that everyone agrees that elements 1 through 4 of the fraud claim, which was jury instruction 19.1, and elements 1 through 5, I believe, of the negligent misrepresentation claim will be res judicata. That means we don't have to prove them again, evidence need not be offered on those issues again. And then everyone goes on to say ... and agree to at pages 5 and 6 that the issues remaining for trial would be the remaining element of [the claims].
 R.Vol. II at 19-20.
 
 
 [3]
 THE COURT [to counsel for defendants]: Well, I'd agree with your argument if this were a motion based on the Court being asked to apply the doctrine of collateral estoppel to the jury's findings.... Let me suggest another approach, though. You say in--or said in your response to the plaintiffs' supplemental opposition to your motion to dismiss, November 28 pleading--paper, whatever we're calling it--brief, on Page 5 "The essence of plaintiffs' case is that the failure of the Conifer Project caused the failure of the other three projects." Are you with me on the reference?
 MR. CHASE [counsel for defendants]: I'm sorry. Yes, I see that, Your Honor.
 THE COURT: All right. Then you go on to say, "The central inquiry is what caused Conifer to fail. Reliance upon a misrepresentation," et cetera. I suggest that the stipulation could be read to mean you caused--your client, these defendants caused Conifer to fail, therefore, the stipulation can be given effect simply by saying to a jury in this case that it has previously been determined that Conifer failed because of false information and representations by the defendants, period. Then it is up to the plaintiffs to prove that these other failures were in consequence of that Conifer failure. Isn't that what the judge had in mind? That seems to me what she had in mind, although I will concede that her refusal to go forward with setting damage trials in the other case causes me to wonder.
 R.Vol. II at 11-12.
 
 
 [4]
 If a contractual provision is ambiguous, its interpretation is a question of fact that cannot be resolved summarily but where the meaning is plain it should be interpreted as stated irrespective of the intent of the parties. Florom v. Elliott Mfg., 867 F.2d 570, 575 (10th Cir.1989); Gomez v. American Elec. Power Service Corp., 726 F.2d 649, 651 (10th Cir.1984); cf. Amoco Production Co. v. Western Slope Gas Co., 754 F.2d 303, 307 (10th Cir.1985) (under Colorado Commercial Code). While evidence of a party's intent is admissible to ascertain the meaning of an ambiguous contract, it may not be used to alter plain and unequivocal language, which must be applied as a matter of law. Lazy D Grazing Ass'n v. Terry Land and Livestock Co., 641 F.2d 844, 849 n. 12 (10th Cir.1981)
 
 
 [5]
 A stipulation between parties, particularly in the litigation context when approved by the court, is a binding contract enforceable on the basis of contract principles or by way of admission. Smith v. Pinner, 891 F.2d 784 (10th Cir.1989); United States v. Northern Colorado Water, 608 F.2d 422 (10th Cir.1979); Durbin v. Bonanza Corp., 716 P.2d 1124 (Colo.App.1986); Elsenson v. Elsenson, 158 Colo. 394, 407 P.2d 20 (1965); Craft v. Stumpf, 115 Colo. 181, 170 P.2d 779 (1946). Especially in contemporary context when emphasis upon alternate dispute resolution (ADR) may be symptomatic of decreased confidence in our judicial system, should stipulations in settlement of controversies or to promote their fair and expeditious resolution be encouraged. See Fed.R.Civ.P. 1
 
 
 [6]
 See 1B Moore's Federal Practice p 0.441 and its reference to Judge Learned Hand's classic statement in Irving National Bank v. Law, 10 F.2d 721, 724 (2d Cir.1926):
 A judgment may be a merger or bar, or it may be an estoppel. For the first, the cause of action must be the same; for the second, they may be as different as possible. On the other hand, the merger or bar extends not only to all matters pleaded but to all that might have been, while the estoppel extends only to facts decided and necessary to the decision.
 See also In Re: Vern O. Laing, Debtor; Johnson v. Laing, 945 F.2d 354 (10th Cir.1991).
 
 
 [7]
 Clearly, the jurisdictional and foundational allegations were sufficient and have not been questioned. The following additional allegations appear:
 The apartment projects were to be developed in an overlapping time frame, with construction commenced sequentially, starting with Conifer Landings and ending with Eagle Trace [paragraph 17 of the complaint].
 Pursuant to written commitments, Puller and FNMA agreed to provide this financing among other things for the Conifer and Thornhill Farm projects [id. 18-21]. Among the conditions imposed by FNMA and Puller for the Conifer Landings financial commitment were a prohibition of rental concessions and a requirement that the Conifer Landing projects maintain a sustaining occupancy level generating at least $1,345,200 from 89% of the units. During the latter part of 1984, agents and employees of Puller and FNMA represented that they would renegotiate the occupancy level for Conifer Landings and would allow rental concessions subsequent to closing on the financing and that at that time they did not intend to perform the promises represented and later failed and refused to renegotiate their rental concessions and occupancy level while the Conifer Landings project remained viable [id. 23-25]. In September of 1985, agents and employees of Puller and FNMA represented that they would work with Musick and various entities controlled by them in order to work out the mortgage payments due in connection with the financing provided for the Conifer Landings project but had no intention of performing the promise represented [id. 26, 27].
 On October 2, 1985, in violation of FNMA's lending guidelines, in violation of the Puller and FNMA commitment letters and in breach of the representation contained in paragraphs number 23 and 26, Puller and FNMA commenced foreclosure proceedings in connection with the Conifer Landings project and as a direct and proximate result of the misrepresentations before set out, plaintiffs were damaged to the loss of their investment in the apartment projects [emphasis mine], their expectation of certain fees and profits from those projects [emphases mine], and in other respects [id. 29].
 Plaintiffs acted in justifiable reliance upon the misrepresentations by continuing to develop the apartment projects [emphases mine] to their damage in specified amounts in connection with the Thornhill Farm, The Landings, and Eagle Trace [id. 30-37].
 In plaintiffs' consolidated action, the jury found the misrepresentations were false representations of past or present facts; that the misrepresentations were material and that defendant made the misrepresentations knowing them to be false or with the awareness that they did not know whether the misrepresentations were true or false and that the defendants made the misrepresentations with the intent that plaintiffs act in reliance upon them; that plaintiffs relied on the misrepresentations by continuing to develop the apartment projects [emphases mine]. Plaintiffs' reliance upon the misrepresentations caused them to suffer damages in connection with the Thornhill Farms, The Landings and the Eagle Trace projects [emphases mine] in specified amounts [id. 39-45].
 
 
 [8]
 The defendants themselves have rendered doubly clear the significant context of interrelated damages in which the stipulation occurred:
 At trial, while questioning potential jurors on voir dire Musick (who appeared pro se) indicated that he would be seeking to recover damages relating to other projects, although the claim of the Musick-Buder group related only to the Conifer project. As a result, William G. Horlbeck, then trial counsel for Fannie Mae and Puller, filed a motion in limine seeking to exclude evidence related to other projects. See Exhibit B to the September 6, 1989 brief. Horlbeck emphasized that the Musick-Buder group had asserted no claims concerning projects other than the Conifer project.
 As a result of the motion in limine, the parties entered into the Stipulation, agreeing that the damages in the prior proceeding would be limited "to any damages that plaintiffs may have incurred with respect to the Conifer Landing project only."
 Appellees' answer brief at 8.