Andre HYMAN, Plaintiff,

and

Norfolk Shipbuilding and Drydock
Corporation, Intervenor–
Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 2:91cv00736.

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 18, 1992.

Jon P. Eichler, Norfolk, Va., for Andre Hyman.

F. Nash Bilisoly and Thomas J. Duff, Vandeventer, Black, Meredith & Martin, Norfolk, Va., for Norfolk Shipbuilding & Drydock Corp.

George M. Kelley, III, Asst. U.S. Atty., Norfolk, Va., for the U.S.

## ORDER

CLARKE, District Judge.

This matter comes before the Court on the motion of the defendant, the United States of America, for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the Court grants the defendant's motion.

Plaintiff, Andre Hyman, alleges he was injured in an automobile accident which occurred on April 12, 1990 inside the Norfolk Naval Base. At the time of the accident, plaintiff was employed by the Norfolk Shipbuilding and Drydock Corporation ("Norshipco") as a handyman and was involved in the installation of insulation on the *U.S.S. Wasp*, a United States Navy vessel moored at the Norfolk Naval Base. Norshipco was a subcontractor to Ingalls Shipbuilding, Inc. ("Ingalls") for performance of work aboard the *Wasp*. Ingalls, in turn, was a direct contractor with the United States Navy ("Navy") for the performance of post-delivery warranty work aboard the *Wasp*, a vessel in active service with the Navy.

On the day of the accident, Hyman reported to work aboard the *Wasp*. His supervisor, a Norshipco employee, told him to move his automobile to a parking lot designated for Norshipco employees. While plaintiff was moving his car, he was involved in a collision with a Navy-owned van driven by an employee of the Naval Public Works Center. The driver was not involved with the work being performed on the *Wasp*, but instead was proceeding to a Naval Base building to remove asbestos.

Plaintiff, Hyman, accepted compensation under the Longshore and Harbor Workers' Compensation Act ("LHWCA") (33 U.S.C. §§ 901–950). He then filed this negligence action under the Federal Tort Claims Act (28 U.S.C. §§ 1346 & 2671–2680) seeking to recover for his personal injuries and property damage as a result of that accident.

In its Motion for Partial Summary Judgment, defendant asserts that under the Virginia Workers' Compensation Act (*formerly* Va.Code Ann. §§ 65.1–1 to 65.1–163 *now* Va.Code Ann. §§ 65.2–100 to 65.2–1310 (Michie 1991)), the United States is the statutory employer of the plaintiff, and therefore is immune from this suit for plaintiff's personal injuries.

The Federal Tort Claims Act does not create a separate cause of action; it simply waives sovereign immunity and allows the United States to be sued in the same manner as a private person under the law of the place of the tort. *See* 28 U.S.C. § 1346(b); *Feres v. United States*, 340 U.S. 135, 141, 71 S.Ct. 153, 157, 95 L.Ed. 152 (1950). State-law defenses, such as the immunity granted for "statutory employers," are available in tort actions based on state law, notwithstanding the plaintiff's receipt of compensation under the LHWCA. *Garvin v. Alumax of South Carolina, Inc.*, 787 F.2d 910, 917 (4th Cir.), *cert. denied*, 479 U.S. 914, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986). The Virginia Workers' Compensation Act is the exclusive remedy for an employee to recover from his employer for injuries sustained on the job, *see* Va.Code Ann. § 65.1–40 *now* Va.Code Ann. § 65.2–307 (Michie 1991); consequently, the employer is otherwise immune from suit

for negligence. Thus, if defendant is found to be a statutory employer of the plaintiff under the provisions of the Virginia Workers' Compensation Act, then the defendant is entitled to the immunity conferred upon employers under that Act; plaintiff cannot maintain this negligence action for his personal injury claim.

■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). To avoid summary judgment, the nonmoving party must introduce evidence to create an issue of material fact on "an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The Virginia Workers' Compensation Act provides the definition of a "statutory employer:"

When any person (in this section ... referred to as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section ... referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him.

Va.Code Ann. § 65.1–29 (*now* Va.Code Ann. § 65.2–302(A) (Michie 1991)). If the plaintiff was engaged in the "trade, business, or occupation" of the United States Navy, then the defendant would be his statutory employer for purposes of the Workers' Compensation Act.

The Virginia Supreme Court has, on several occasions, defined the "trade, business or occupation" of a governmental entity under section 65.1–29:

It is not simply what [governmental entities] do that defines their trade, business, or occupation. What they are supposed to do is also a determinant. Whereas a private business entity is essentially self-defining in terms of its trade, business, or occupation, a [governmental entity] has duties, obligations, and responsibilities imposed upon it by statute, regulation, or other means.

*Henderson v. Central Telephone Co.,* 233 Va. 377, 383, 355 S.E.2d 596, 599–600 (1987). Any activity which a governmental entity "is authorized or required to do by law or otherwise, is considered the trade, business, or occupation of the owner." *Nichols v. VVKR, Inc.,* 241 Va. 516, 521, 403 S.E.2d 698, 701 (1991). Therefore, the defendant's "trade, business, or occupation" is determined by what the United States Navy is required or authorized to do by law.

Several statutes and regulations govern the functions and responsibilities of the United States Navy. By statute, the Secretary of the Navy

is responsible for, and has the authority necessary to conduct, all affairs of the Department of the Navy, including the following functions:

(1) Recruiting.

(2) Organizing.

(3) Supplying.

(4) Equipping....

(5) Training.

(6) Servicing.

(7) Mobilizing.

(8) Demobilizing.

(9) Administering....

(10) Maintaining.

(11) The construction, outfitting, and repair of military equipment.

(12) The construction, maintenance, and repair of buildings, structures, and utilities and the acquisition of real property and interests in real property necessary to carry out the responsibilities specified in this section.

10 U.S.C. § 5013(b). *See also* 32 C.F.R. § 700.102 (fundamental objectives of the Department of the Navy are to "organize,

train, equip, prepare, and maintain the readiness of the Navy ..., and [t]o support Navy ... forces....); 32 C.F.R. § 700.-304(b)(1) & (2) (Chief of Naval Operations has the specific responsibility to "organize, train, equip, prepare, and maintain the readiness of Navy forces," and to "determine and direct the efforts necessary to fulfill current and future requirements of the Navy ... for manpower, material, weapons, facilities, and services....").

In a recent unpublished opinion, the Fourth Circuit held that painting a Naval vessel was part of the "trade, business or occupation" of the United States Navy. *Lawrence v. United States*, No. 92–1168, slip op. at 4 (4th Cir. Aug. 11, 1992) [972 F.2d 340 (TABLE)] (per curiam). Lawrence was an employee of Superior Marine which was under contract with the Navy to perform repair and maintenance work on the *U.S.S. Nassau*. *Id.* at 2. While Lawrence was painting the *Nassau* from the bucket of a crane, a truck owned by the Government and driven by a Government employee struck the crane, causing him to fall to the ground. *Id.* After reviewing several sections of the Code of Federal Regulations, the court found that "[t]hese regulations authorize and require the maintenance of the ships in the Atlantic Fleet, work that we believe manifestly includes painting the ships." *Id.* at 4.

The Court finds that the United States is the statutory employer of the plaintiff. The "trade, business or occupation" of the Navy includes the repair and maintenance of Navy vessels. Plaintiff, Hyman, was primarily involved in the installation of insulation on the *U.S.S. Wasp*. The parties have agreed that at the time of the accident, "the work of the Plaintiff, Andre Hyman ... on the USS WASP, involved repair and maintenance to a United States Naval vessel and said repair and maintenance was a part of the ordinary operational and readiness concern of the United States Navy...." *See* Additional Stipulations of Fact, para. 1 (filed Aug. 11, 1992). Therefore, the plaintiff was engaged in the "trade, business or occupation" of the United States Navy, rendering the United States his statutory employer.

Intervenor-plaintiff, Norshipco, argues that there is no evidence that the driver of the truck who injured the plaintiff, was involved in the work of the Navy, Norshipco, or any other subcontractor of the *U.S.S. Wasp*. Plaintiff cites several cases for the proposition that it "is the aim of the Virginia Workers' Compensation Act that the financial risks of accidental injuries inherent in any project be borne by and limited to that project." Memorandum of Intervenor [Norshipco] in Opposition to Motion for Partial Summary Judgment, at 4 (received Aug. 7, 1992) (citing *Turnage v. Northern Virginia Steel Corp.* 336 F.2d 837, 841 (4th Cir.1964); *Bristow v. Safway Steel Products*, 327 F.2d 608, 610 (4th Cir. 1964).

 Norshipco defines "project" too narrowly. The Workers' Compensation Act renders the owner a "statutory employer" when the subcontractors and workers are involved in the owner's "trade, business or occupation." When determining whether the United States is a statutory employer, "the proper focus is on the **agency** or **department** of the United States which contracted the work." *Izard v. United States*, 946 F.2d 1492, 1495 (10th Cir.1991) (emphasis in original); *see also Pendley v. United States*, 856 F.2d 699, 701–702 (4th Cir.1988) (analyzing the trade, business or occupation of the Department of the Air Force), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1640, 104 L.Ed.2d 155 (1989). Therefore, the focus in this case is the trade, business or occupation of the Department of the Navy as a whole, not the individual projects being performed. *Izard*, 946 F.2d at 1496. Contrary to Norshipco's assertion, the focus is not solely limited to the specific project of repairing and maintaining the *U.S.S. Wasp*. Rather, the focus is the overall function of the Navy which includes not only the repair and maintenance of United States Navy vessels, but also those land-based operations necessary for the support and readiness of the Naval forces.

The parties have agreed that, at the time of the accident, the driver of the truck was a civilian employee of the Navy working at

the Norfolk Naval Base in the Navy Public Works Center, and was "proceeding to a Naval Base building to remove asbestos insulation." *See* Additional Stipulations of Fact, para. 2 (filed Aug. 11, 1992). His specific job was not a part of the contract between the Navy, Ingalls or Norshipco, nor did it involve work related to the *U.S.S. Wasp*. *Id.* His job was, however, a part of the general maintenance activities at the Norfolk Naval Base. *Id.* Because the authorized functions of the Navy include the construction, maintenance, and repair of buildings, *see* 10 U.S.C. § 5013(b)(12), the driver was also engaged in the trade, business or occupation of the Navy. *Cf. Muldrow v. United States* (4th Cir.1992) [972 F.2d 341 (TABLE)] (per curiam) (weed-trimming on Naval base is "trade, business or occupation" of the Navy when performed pursuant to standards-of-appearance directives issued by Naval Base Commander under authority of regulations giving Commander absolute responsibility for maintaining Naval Base).

■ Since the focus for determining statutory employer status is on the Navy as a whole and not individual projects of the Navy, the fact that the driver was not involved with the *Wasp* contract does not change the fact that the plaintiff, Hyman, was injured while engaged in the trade, business or occupation of the Navy. As a result, the United States is the statutory employer of the plaintiff, Hyman, under the Workers' Compensation Act, and his personal injury claims cannot be asserted by this negligence action.

The defendant's Motion for Partial Summary Judgment is GRANTED. Because the parties represented to the Court that they have disposed of the remaining property damage claim by agreement, no further issues are left to resolve. Accordingly, this action is DISMISSED with prejudice.

IT IS SO ORDERED.