**In the Matter of the DEATH OF Delbert ROBINSON.**

**Anita J. ROBINSON, Petitioner,**

v.

**JACK W. HORATH SECURITY, L.B. Jackson Drilling, United General Insurance, and Workers' Compensation Court, Respondents.**

**No. 64490.**

Court of Appeals of Oklahoma, Division No. 2.

Dec. 3, 1985.

Rehearing Denied Jan. 13, 1986.

As Corrected May 14, 1986.

George A. Farrar, Farrar & Farrar, Tulsa, for petitioner.

W. Creekmore Wallace, II, Sapulpa, for respondent Horath Sec.

John A. McCaleb, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for respondents L.B. Jackson Drilling and United General Ins.

MEANS, Judge.

Claimant, the widow of worker Delbert Robinson, has appealed from the denial of benefits. The trial court found that worker's death from a heart attack was not sustained in the course and scope of his employment. A three-judge panel of the Workers' Compensation Court affirmed. Having reviewed the record and applicable law, we vacate the order of the three-judge panel and remand for proceedings consistent with this opinion.

In March 1983, Delbert Robinson retired from Liberty Glass after working for that company for almost thirty years. He was in good health and had no history of heart disease or heart problems. In May 1983, Robinson began working as a security guard at well sites owned and operated by Respondent L.B. Jackson Drilling. Robinson had been hired by Respondent Horath Security, in charge of security at the well sites. Although Horath paid Robinson, he received security assignments and instructions from both Horath and L.B. Jackson personnel.

Robinson died while working for Respondents on October 28, 1983. On the night of his death, Robinson and his wife were sitting in their van when Robinson heard a strange noise and ran toward the well site, approximately one block away. His wife yelled to him to ask if anything was wrong, and he answered in a voice that sounded strained. When Robinson returned to the van he complained of indigestion. A few minutes later he collapsed. By the time emergency personnel arrived, Robinson was dead. The cause of death was listed as acute myocardial infarction.

Claimant filed a worker's compensation claim for death benefits, asserting that Robinson's death occurred while performing his duties as a security guard at the oil and gas lease. Claimant alleged that the stress and strain of his job was the direct cause of his death.

L.B. Jackson Drilling and its insurance carrier filed an answer in which it denied that Robinson had been employed by L.B. Jackson Drilling, denied that Robinson was acting within the scope of his employment, and denied that the death arose out of and in the course of the alleged employment. Horath Security did not file an answer.

Both Respondents filed a Form 10 pretrial stipulation. Each denied worker's employment, denied accidental injury, and denied notice. Horath Security indicated that it was uninsured. Both Respondents listed

witnesses, but neither Respondent listed medical witnesses.

At trial on December 10, 1984, the court heard testimony of Claimant and Jack Horath, as well as the deposition of Claimant's expert, Dr. John Ellis. In Dr. Ellis's opinion, Robinson's death was directly related to his work. Dr. Ellis stated that Robinson's excited state and his exertion in running to the rig had precipitated his death. Dr. Ellis had examined the brief medical history, the report of the doctor who arrived at the scene of death, and the history supplied by family members.

Respondents presented no medical evidence, but instead seemed to concentrate on the issue of employment. Both L.B. Jackson Drilling and Horath Security asserted that Robinson was not employed by them. Respondent L.B. Jackson Drilling requested that it be allowed to present a hypothetical question to its expert, Dr. McCampbell, based on the information received at trial. This expert was not called at trial, nor was he deposed before trial. Claimant objected, contending that Respondent had not listed this expert on the pretrial stipulation. Claimant further pointed out that all the witnesses at trial had been deposed before trial and that nothing new was presented during the trial. Claimant noted Rule 19 of the Workers' Compensation Court, 85 O.S.1981, ch. 4, app., which states: "Any witness not listed on the appropriate form shall not be allowed to testify."

Nevertheless, the trial court allowed Respondent to present the expert's testimony by way of a hypothetical. On December 19, 1984, Respondent filed McCampbell's answer to the hypothetical. Claimant was never given an opportunity to confront and cross examine Respondent's witness, nor to challenge the hypothetical question. Claimant filed a written objection to both the hypothetical question and the answer on December 28, 1984. Claimant raised specific objections to the competency and probative value of the hypothetical: that it posed an improper test for compensability, that it failed to encompass pertinent facts and exhibits, and that it was based on speculation rather than medical certainty. Nothing in the record shows that Claimant's objection was ever ruled on by the trial judge.

Without making any findings concerning the admissibility or competency of the hypothetical, the trial court entered its order on March 19, 1985. The court's order merely states: "THAT the deceased did not sustain an accidental personal injury arising out of and in the course of his employment with the above named respondent, resulting in his death." There is no statement as to why the court reached that conclusion—whether the death was caused by a pre-existing condition, whether it was not work related, or whether worker was not in the course and scope of his employment when he died. There is also no finding concerning Robinson's employer—an issue highly contested at trial.

Claimant appealed to a three-judge panel, again raising specific issues of error. Claimant attacked the order as being vague and uncertain, against the clear weight of the evidence, and not sustained by the medical evidence. Claimant also contended that the order omitted findings necessary for an appeal, asserting errors in the court's failure to make sufficient findings to sustain the order, failure to rule on the objections to the hypothetical question, allowing Respondents to present witnesses not listed on the pretrial stipulation, and allowing Respondents to present medical testimony after trial.

The three-judge panel entered its order on May 10, 1985, merely stating that the order of the trial judge "be and the same is hereby AFFIRMED." Claimant has appealed.

■ On appeal to this court, a decision of the three-judge panel will not be overturned if supported by any competent evidence. *Parks v. Norman Municipal Hospital*, 684 P.2d 548 (Okla.1984). However, where the findings of fact are too indefinite and uncertain for judicial interpretation, the appellate court, on review, will vacate the order for further proceedings. *Glea-*

*son v. State Industrial Court,* 413 P.2d 536 (Okla.1966) (per curiam).

In *Gleason,* the appellate court was faced with an order similar to the one here on appeal. Neither the trial court nor the three-judge panel made findings of fact and conclusions of law which were capable of judicial interpretation. The supreme court noted:

> This Court is firmly committed to the rule that the Industrial Court is *required to make specific findings of the ultimate facts responsive to the issues as well as conclusions of law upon which an order is made* granting or denying an award to a claimant, and they should be *sufficiently definite to enable this Court to pass intelligently upon the correctness or incorrectness* of such orders based upon the facts.

*Id.* at 538 (emphasis added).

Similarly, in *Butts v. Rose Drilling Co.,* 304 P.2d 986 (Okla.1956), the court vacated an order for further proceedings. In *Butts,* the worker died of a heart attack while on the job. The trial court denied benefits, and the three-judge panel affirmed. Neither made specific findings of the ultimate facts responsive to the issues. The court vacated the order, finding it too indefinite and uncertain, and reiterated the duty of the Workers' Compensation Court to make specific findings responsive to the issues. The *Butts* court relied on *Cummins v. State Industrial Commission,* 264 P.2d 721 (Okla.1953), where the court vacated an order denying compensation which stated that the worker "did not sustain an accidental personal injury, arising out of and in the course of his employment with the respondent herein resulting in his death."

We note that the language of the orders in *Butts* and *Cummins* is nearly identical to that in the instant case. Both the trial judge and the three-judge panel were faced with specific issues to be addressed in the order. Without findings of fact and conclusions of law which are responsive to these issues, this court is unable to engage in a meaningful review of the decision.

■ This court does have jurisdiction to reach the employment issue which was highly contested at trial. Both L.B. Jackson Drilling and its security contractor Horath denied an employment relationship existed with Robinson. It is well settled that the relationship of employer and employee is a jurisdictional issue. *Ron-Jon Co. v. Pinson,* 555 P.2d 1014 (Okla.1976). On review, the appellate court will conduct an independent examination of the law and facts to determine whether such relationship exists. *Dodd v. Rush,* 406 P.2d 261 (Okla.1965).

Title 85 O.S.1981, § 11, makes a "principal employer" liable for compensation to the injured employee of a subcontractor or independent contractor, or another employee engaged in their business. *O'Baugh v. Drilling Well Control, Inc.,* 609 P.2d 355 (Okla.1980). A "principal employer" status generally exists when the worker is engaged in work that is a "necessary and integral part" of the employer's principal business. *W.P. Atkinson Enterprises, Inc. v. District Court,* 516 P.2d 541 (Okla. 1973). The supreme court has focused on "the task for the performance of which he hired the independent contractor" and stated:

> Proper application of the test requires a two-step consideration: [1] the task being performed by the worker, when injured, must be necessary and integral part of hirer's day-to-day business operations or [2] one that is within the range of activities customarily carried out by one in the hirer's line of business. *If the contractor, however independent he may be, is merely a medium through whom the hirer is pursuing the day-to-day activity of his own business, § 11 status is created* by operation of law and compensation liability attaches.

*Murphy v. Chickasha Mobile Homes, Inc.,* 611 P.2d 243, 244–45 (Okla.1980) (emphasis added).

Robinson's work as a security guard for the equipment and property of L.B. Jackson Drilling was clearly a necessary, inte-

gral activity of its daily operations. His guard assignments and instructions came from L.B. Jackson Drilling personnel, as well as Horath Security. Since Horath Security failed to provide workers' compensation insurance, L.B. Jackson Drilling is liable as a "primary employer."

The order is vacated and the cause remanded to the three-judge panel for proceedings consistent with this opinion.

BACON, J., concurs.

REIF, P.J., concurs specially.

REIF, Presiding Judge, specially concurring.

I join the majority decision without reservation. I specially concur in order to offer additional considerations upon remand.

Worker Robinson suffered a fatal myocardial infarction immediately after investigating a strange noise at an L.B. Jackson well site. Robinson's wife, who regularly accompanied him on his guard duty, reported that he had run about a block in the dark in response to a noise. The medical expert offered by Claimant in support of her claim for death benefits stated that the excitement and running during this work activity precipitated Robinson's death.

*Avco Corp. v. Swartzlander*, 470 P.2d 340, 344 (Okla.1970), held that a heart disability caused or precipitated by a strain or exertion while the employee is doing his work in the usual and customary manner is compensable although the precipitating exertion is not unusual. The accidental strain or exertion need not be the sole cause of the heart disability, but it is sufficient if it is a direct and contributing cause.

Whether a heart attack suffered by a workman resulting from strain and exertion arising out of and in the course of his employment or from other causes which are unrelated thereto and disconnected therefrom, presents a question of

fact for the determination of the [workers' compensation tribunal], whose finding on such issue will not be disturbed by this Court on review when based on *competent evidence reasonably tending to support it.*

*Id.* at 344 (emphasis added).

In *Meadow Gold Dairies v. Oliver*, 535 P.2d 290, 294 (Okla.1975), the court stated such a determination was to be made "upon consideration of skilled expert testimony." The court also indicated a claim is supported where the "basis for expert opinion testimony, which fixed the causal connection between deceased's employment and death, substantially incorporated and was entirely consistent with the facts which claimant's proof fairly tended to establish."

The only "skilled expert testimony" in the record is the deposition of the doctor offered by Claimant in support of the claim and Respondent's hypothetical. In evaluating the "competency" of these, the three-judge panel should bear in mind that the Respondent's hypothetical was propounded to a witness who was not listed prior to trial as required. It was also offered without opportunity for Claimant to confront and cross-examine the witness. In that respect, the hypothetical is in violation of both due process and the court's rule. Its competency is doubtful. With regard to the deposition of Claimant's doctor, the three-judge panel should generally consider the *Swartzlander* test and the "substantial incorporation and consistency with proof" test of *Oliver* in evaluating this skilled expert's opinion of causal connection between the worker's employment and death.