2000 OK CIV APP 18

**Carl Ray SHACKELFORD, Plaintiff/Appellant, and Mid–Continent Casualty Company, Intervenor-Plaintiff/Appellant,**

v.

**AMERICAN AIRLINES, INC., Defendant/Third Party Plaintiff/Appellee, Alloy Welding Supply, Inc., Third Party Defendant.**

No. 91151.

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 4, 1999.

Certiorari Denied Jan. 25, 2000.

Carol Seacat, Seacat, Seacat & Seacat, Tulsa, Oklahoma, For Appellant Carl Ray Shackelford,

Roger R. Williams, Williams and Bolt, Tulsa, Oklahoma, For Appellant Mid–Continent, Casualty Company,

James N. Edmonds, Atkinson, Haskins, Nellis, Boudreaux, Holeman, Phipps & Brittingham, Tulsa, Oklahoma For Appellee American, Airlines, Inc.

## OPINION

ADAMS, Judge:

¶ 1 Carl Shackelford was allegedly injured while he was installing "blackout curtains" in a newly constructed parts inspection booth at an aircraft maintenance facility in Tulsa, Oklahoma, owned and operated by American Airlines, Inc. (American). The booth construction was part of a larger renovation plan at the facility. American had contracted the primary renovation work with another contractor, but contracted separately with American Alloy Supply, Inc., to fabricate and install the curtains, which were designed to insure proper lighting conditions in the booth to allow accurate inspection of aircraft parts. American Alloy contracted with Shackelford's immediate employer, American Canvas, to provide the curtains and install them.

¶ 2 Shackelford sued American, claiming the negligence of its employees and negligent maintenance of its property caused his injury. American filed a third-party petition against American Alloy for indemnity under their contract, and the workers' compensation insurance carrier for Shackelford's immediate employer, Mid–Continent Casualty Company, intervened as a plaintiff to protect its subrogation right to reimbursement for workers' compensation benefits paid to Shackelford. Shackelford and Mid–Continent have filed a joint brief, and their interests are identical for purposes of this appeal. Therefore, unless the context indicates otherwise, any reference to Shackelford includes Mid–Continent.

¶ 3 As an affirmative defense, American asserted it was entitled to the immunity from common law suit provided by 85 O.S.1991 § 12 because it was Shackelford's "principal employer" under 85 O.S.1991 § 11 and was secondarily liable to him for workers' compensation benefits as a result of this injury. Shackelford contended American was not secondarily liable for workers' compensation

and had no immunity. On the fourth day of trial, the trial court sustained a motion for directed verdict by American, concluding that Shackelford's evidence had established American's immunity defense.[1] The trial court entered judgment for American against Shackelford and Mid–Continent, denying recovery on their claims and awarding American costs against them. Subsequently, the trial court entered judgment for American on its indemnity claim against American Alloy. Shackelford filed a motion for new trial, which the trial court overruled. This appeal followed.

¶ 4 Both parties agree that *Bradley v. Clark*, 1990 OK 73, 804 P.2d 425, provides the guidelines for determining the issue in this case. They differ in their application of those guidelines to the undisputed facts presented in this record. *Bradley* represents the Oklahoma Supreme Court's most recent attempt to refine the "necessary and integral" test adopted in *W.P. Atkinson Enterprises, Inc. v. District Court of Oklahoma County*, 1973 OK 97, 516 P.2d 541. This test is used in determining whether the "hirer" of an independent contractor is a principal or statutory employer of the employees of the independent contractor and is therefore secondarily liable for workers' compensation benefits to those employees under § 11 and immune from common law suit by those employees under § 12. Generally, under that test, the "hirer" is considered a principal employer if the work which the independent contractor was engaged to perform is a "necessary and integral" part of the "hirer's" business.

¶ 5 *Bradley* was preceded by *Murphy v. Chickasha Mobile Homes, Inc.*, 1980 OK 75, 611 P.2d 243. *Murphy* abandoned any attempt to reconcile Oklahoma's pre-*Atkinson* case law in favor of a two-step inquiry. According to *Murphy*, 1980 OK 75, ¶ 2, 611 P.2d at 244–245:

A principal employer, within the meaning of the compensation law, must be defined in terms of the task for the performance of

which he hired the independent contractor. Proper application of the test requires a two-step consideration: [1] the task being performed by the worker, when injured, must be necessary and integral part of hirer's day-to-day business operations or [2] one that is within the range of activities customarily carried out by one in the hirer's line of business. If the contractor, however independent he may be, is merely a medium through whom the hirer is pursuing the day-to-day activity of his own business, § 11 status is created by operation of law and compensation liability attaches.

¶ 6 The Court refined this analysis in *Bradley*, 1990 OK 73, ¶ 6, 804 P.2d at 427–428, expressly adopting "the three-tier test crafted by the Louisiana Supreme Court for determining an entity's statutory employer status." (Footnote omitted). In doing so, the Court relied upon *Berry v. Holston Well Service, Inc.*, 488 So.2d 934 (La.1986). Rather than supplanting *Murphy*, the Court noted that "Louisiana's more restrictive approach is harmonious with our own institutional design fashioned in *Murphy* and serves here as a sharp tool for implementing the *Murphy* standards." *Bradley*, 1990 OK 73, ¶ 6, 804 P.2d at 428.

¶ 7 According to *Bradley*, the three-tier test requires the court to first determine whether the contract work is specialized or non-specialized. This analysis must consider whether the work requires a level of skill, training, experience, education and/or equipment which is not normally possessed by those outside the contract field. If so, the work is specialized *per se*, and the inquiry ends with the conclusion that the hirer is not a statutory employer.

¶ 8 If the work is not specialized, the court must consider whether the contract work may be considered a part of the hirer's trade or business. One of the factors in this analysis is the manner in which such work is

---

1. At the time of this motion, Shackelford had not rested. However, Shackelford did tell the trial court that he had presented all of the evidence he intended to present on the immunity question. None of the parties objected to the procedural method chosen by the trial court, *i.e.* considering American's directed verdict request after hearing all of Shackelford's evidence on this pivotal issue, and on appeal Shackelford assigns no error in this approach.

normally performed in the hirer's trade or business, i.e., by employees or independent contractors. Finally, the court must consider whether the hirer was actually engaged in performing work similar to that being performed by the hired contractor.

■ ¶ 9   The critical issue in this case is defining the "contract work." The trial court based its decision on the conclusion that the portion of the work under the contract in which Shackelford was engaged at the time of his injury, installation of the curtains, was the appropriate focus of the analysis. Shackelford contends that focus is too narrow.

¶ 10   Shackelford argues the court was required to consider the entire renovation project as the "contract work," citing *Lewis v. Exxon Corporation,* 441 So.2d 192 (La. 1983). In *Lewis,* the plaintiff was injured while performing work that Exxon had used its own employees to perform in the past and which it still had capacity to have handled in that matter. The plaintiff was the direct employee of a contractor who had been hired by Exxon to reconstruct a chemical plant and convert it from producing one chemical to another. The court rejected the argument that it should focus on the particular work or task being done by the plaintiff in making the required analysis, but considered the entire conversion and reconstruction contract as the "contract work."

¶ 11   According to Shackelford, we must consider the entire renovation plan as the "contract work" in applying the test adopted in *Bradley.* The trial court rejected this argument, focusing instead on the work which Shackelford's immediate employer was hired to perform, or at least a portion of that work. We believe *Lewis* is distinguishable insofar as it required consideration of the entire reconstruction contract. Mr. Lewis

was the direct employee of the contractor hired by Exxon to perform the reconstruction and renovation. Shackelford was not employed by the contractor whom American hired to perform the plant renovation, and the contract between American and American Alloy was not included in that contract. Our analysis must focus on the work required under the contract with Shackelford's employer. The trial court correctly did not consider the entire renovation project to be the "contract work" for purposes of applying the test adopted in *Bradley.*

¶ 12   According to Shackelford, even if the entire renovation project is not the "contract work," we must still consider the entire contract under which Shackelford's employer was performing to be the "contract work." This would include not only the installation of the curtains but their fabrication also. According to Shackelford, there is no evidence in the record concerning the level of skill, training or equipment required to fabricate the curtains and no evidence that American employees ever fabricated curtains.

¶ 13   American contends we may not consider this argument because Shackelford did not present it to the trial court in a timely manner. According to American, Shackelford raised this issue for the first time in his Reply Brief in support of his new trial motion, and therefore has not preserved this issue for review.[2] Although we must agree that this argument was not presented as forcefully to the trial court before the judgment was filed as it was afterward and on appeal, the record does demonstrate that Shackelford raised this issue with the trial court prior to its order directing a verdict for American. We cannot say Shackelford has failed to preserve this issue for appeal.

¶ 14   American argues *Murphy* supports the adoption of a task-based approach which

**2.** American cites *Blanke v. Alexander,* 152 F.3d 1224 (10th Cir.1998) for the proposition that "[a] legal argument which is made for the first time in a reply brief on motion for new trial comes too late to preserve the issue for appellate review." *Blanke* differs significantly from this case. There, the defendant allowed the jury to deliberate and return a verdict against him before arguing that it was unfair to *him* to allow the plaintiff to name his trucking company's insurance carrier as defendant as authorized by 47 O.S.1991

§ 169. Moreover, we do not view *Blanke* as establishing some blanket rule preventing the consideration of an argument raised in such a fashion, even in federal court, because the appellate court merely concluded the trial court did not abuse its discretion in refusing to consider that argument. Moreover, the record in this case contains no indication that the trial court refused to consider Shackelford's fabrication argument.

focuses on the portion of the contract being performed by the worker at the time of the injury. We concede that some language in *Murphy*, 1980 OK 75, ¶ 2, 611 P.2d at 244, *i.e.*, "the task being performed by the worker, when injured, must be necessary and integral part of hirer's day-to-day business operations," supports that argument. However, the Court also used "task" to describe the work required by the contract by which the hirer engaged the independent contractor.

¶ 15 Moreover, this approach is directly contrary to *Lewis*, which rejected an analysis that focused only on the particular task being performed by the injured worker at the time of the injury. *Bradley*, 1990 OK 73, n. 10, 804 P.2d at 428, specifically noted that the specialization inquiry must focus "on the scope of the contract work, *rather than on an individual task of the injured worker*." (Emphasis added.) Applying *Bradley*'s "sharp tool" to the principles outlined in *Murphy*, we can only conclude that the relevant inquiry had to include consideration of the fabrication of the curtains.

¶ 16 Because the evidence presented to the trial court did not include any information concerning the facts necessary to determine whether all of the contract work which Shackelford's employer was engaged to perform was "necessary and integral" to American's business, the trial court incorrectly concluded that American's immunity defense was established as a matter of law. However, this lack of evidence does not require us to conclude that American has no immunity. The trial court entered judgment for American only after hearing all of Shackelford's evidence on this issue, and American is entitled to present whatever evidence it may have to provide the information necessary to apply the three-tier test adopted in *Bradley* insofar as it relates to all of the contract work by Shackelford's employer, *i.e.*, fabrication and installation.

¶ 17 The trial court erred in not considering fabrication of the curtains to be part of the contract work which must be used as the focal point in applying *Bradley*, and its judgment must be reversed. The trial court's award for costs to American, based as it was on the judgment which we reverse here, must also be set aside. The trial court's judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED

HANSEN, P.J., and JONES, C.J., concur.