Virgil Arthur **CARLSON**, Jr., **Plaintiff,**

v.

The **UNITED STATES** of America ex rel. **UNITED STATES POSTAL SERVICE, Defendant.**

No. 02–CV–424–K(J).

United States District Court, N.D. Oklahoma.

March 3, 2003.

A Laurie Koller, Carr & Carr, Tulsa, for Virgil Arthur Carlson, Jr, plaintiff.

Cathryn Dawn McClanahan, United States Attorney, Tulsa, for United States Postal Service, United States of America (ex rel.), defendant.

## *ORDER*

KERN, Chief Judge.

Before the Court is Defendant's Motion to Dismiss or for Summary Judgment (# 3).

### *History of Case*

In 1994, the United States Postal Service ("USPS") contracted with Ace Chimney Pointe Hardware Store ("Chimney Pointe") in Tulsa, Oklahoma, to provide a postal unit inside the hardware store. A "Contract Postal Unit" is a contractor-owned facility that contracts with the Postal Service "to provide[ ] selected postal services to the public." Plaintiff was employed as a "Postal Clerk" within the Chimney Pointe postal station on June 25, 1999, when Plaintiff alleges that an employee of the USPS negligently interacted with Plaintiff, and an injury to Plaintiff resulted. Plaintiff filed for and received worker's compensation benefits from Chimney Pointe relating to the June 25, 1999 incident, and now sues the United States for the alleged negligence of the USPS employee. Defendant filed the present motion to dismiss for lack of subject matter jurisdiction, or in the alternative for summary judgment, arguing that it is immune from tort liability under Oklahoma law as Plaintiff's "statutory employer." Previously the Court determined that this was a motion to dismiss for lack of subject matter jurisdiction (# 14).

### *Motion to Dismiss Standard*

■ Plaintiff claims subject matter jurisdiction under 28 U.S.C. § 1346(b), which grants exclusive jurisdiction to the district court for civil actions against the United States for personal injury resulting from the negligent or wrongful act or omission of a government employee. Under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80, the United States can be liable only as a private person would be liable in accordance with the law of the place where the act or omission took place. *Izard v. United States,* 946 F.2d 1492, 1494 (10th Cir.1991). In Oklahoma, a defendant that satisfies the definition of statutory employer is protected from recovery under all but the Workers' Compensation Act.[1] *See* 85 O.S. § 12 (2003); *Izard,* 946 F.2d at 1494 (10th Cir.1991); *Shackelford v. American Airlines, Inc.,* 998 P.2d 646, 648 (Okl. Civ.App.1999); *Parsley v. Rickey,* 962 P.2d 1269, 1271 (Okla.1998); and *Stacy v. Bill Hodges Truck Co., Inc.,* 809 P.2d 1313, 1316 (Okla.1991). Here Plaintiff has already recovered worker's compensation benefits from Chimney Pointe. Therefore, if Defendant was Plaintiff's statutory employer, Plaintiff's remedies against Defendant would be exhausted, the Plaintiff would not be able to bring a civil action against the United States, and the Court would not have subject matter jurisdiction over this case under 28 U.S.C. § 1346(b).

■ Generally, motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) take two forms:

First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. In addressing a facial attack, the district court must accept the allegations in the complaint as true. "Second, a party may go beyond allega-

---

1. The "principal," "general," or statutory employer is one who is secondarily liable for worker's compensation to an independent contractor's employees. *Beall v. Altus Public Sch. Dist.,* 632 P.2d 400, 404 n. 1 (Okla.1981). Although the United States can enjoy the benefit of the statutory employer defense, a state cannot *require* the United States to obtain worker's compensation insurance or pay worker's compensation benefits because of principles of sovereign immunity. *Griffin v. United States,* 644 F.2d 846, 847–48 (10th Cir.1981).

tions contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." In addressing a factual attack, the court does not "presume the truthfulness of the complaint's factual allegations," but "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *United States v. Rodriguez–Aguirre*, 264 F.3d 1195, 1203 (10th Cir.2001) (*quoting Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir.1995)). The motion here is of the second form, a factual challenge. Therefore the Court will consider evidence beyond the pleadings where necessary. As granting a motion to dismiss is a harsh remedy, it must be cautiously studied, both to effectuate the spirit of the liberal rules of pleading and to protect the interests of justice. *See Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir.1999).

### *Discussion*

 According to Oklahoma law, "the principal for whom a contractor is performing work is immune from tort liability for injuries suffered by the contractor's employees in the course of that work, if the work performed by the contractor was 'necessary and integral' to the principal's operations." *Izard*, 946 F.2d at 1494. However, immunity from tort liability is only given to those employers falling within the "vertical chain of immunity," as prescribed in 85 O.S. § 11 and defined in 85 O.S. § 12, i.e., who are either the immediate employer of the injured worker, or the intermediate or principal employer of the injured worker's employer. *Stacy*, 809 P.2d at 1317. Defendant was not Plain-

tiff's immediate employer. Thus the issue here is whether Defendant qualifies as the intermediate or principal employer of Plaintiff's employer, that is, of Chimney Pointe.

To be Chimney Pointe's intermediate or principal employer, Defendant must satisfy the "necessary and integral" test, which was adopted in *W.P. Atkinson Enters., Inc. v. District Court of Okla. County*, 516 P.2d 541, 543–44 (Okla.1973). *See also Bradley v. Clark*, 804 P.2d 425, 427 (Okla. 1990). In 1980, the Oklahoma Supreme Court refined the "necessary and integral" in *Murphy v. Chickasha Mobile Homes, Inc.*, 611 P.2d 243 (Okla.1980). The court phrased the "necessary and integral" test in two different ways within *Murphy*. First, the court phrased the test as: "[1] the task being performed by the worker, when injured, must be [sic] necessary and integral part of hirer's day-to-day business operations or [2] one that is within the range of activities customarily carried out by one in the hirer's line of business." *Murphy*, 611 P.2d at 244. Later, the court stated:

> For a distortion-free determination of hirer's status as statutory § 11 employer under the "necessary-and-integral" test, we fashion here a helpful two-part task-related standard. Tasks performed by an independent contractor are [sic] "necessary and integral" part of the hirer's operations within the meaning of the test when they [1] are directly associated with the day-to-day activity carried on by the hirer's line of trade, industry or business or [2] would customarily be done in that line of business.

*Id.* at 248.[2] Courts have quoted the "necessary and integral" test in both of its

---

2. Defendant suggests that this second phrasing of the test may be an expansion of only part one of the first form of the test, that is that the latter test applies only to whether the task being performed by the worker, when injured, was a necessary and integral part of

hirer's day-to-day business operations. As the first test is phrased in the disjunctive, then, Defendant could still satisfy the *Murphy* test if the task being performed by the worker is one that is within the range of activities custom-

**1044**

forms, so the Court cannot say that one is preferred over the other. *See e.g. Izard,* 946 F.2d at 1494; *Murray v. George E. Failing Co., Inc.,* 773 F.2d 273, 274 (10th Cir.1985); *Shackelford,* 998 P.2d at 648; *Van Zant v. Peoples Elec. Coop.,* 900 P.2d 1008, 1010 n. 3 (Okla.Civ.App.1995); *In re Robinson,* 718 P.2d 714, 717 (Okla.Civ.App. 1985); *Bradley,* 804 P.2d at 427 n. 9.

In 1990, the Oklahoma Supreme Court adopted the three-part analysis of *Berry v. Holston Well Serv., Inc.,* 488 So.2d 934 (La.1986), to help implement the "necessary and integral" test. *Bradley,* 804 P.2d at 427–28. The more restrictive *Bradley* test "allows the court to consider the hirer's size and complexity in relation to the task to be performed in order to ascertain that entity's statutory employer status." *Bradley,* 804 P.2d at 428. However, it is not clear whether courts are to utilize *Bradley* alone to determine whether a defendant is a principal employer, or whether a defendant must satisfy the two-part test of *Murphy* in addition to the three-part test of *Bradley.* This particular question has never been addressed by a court, presumably because parties have never faced the factual situation wherein the application of both *Bradley* and *Murphy* could lead to a different result than application of *Bradley* alone. This is just the situation faced by the Court here because the parties disagree about one part of the *Murphy* test, that is, whether the task being performed by Plaintiff, when he was injured, was a necessary and integral part of USPS' day-to-day business operations. If, as Plaintiff contends, the task he was performing at the time he was injured was not a necessary and integral part of USPS' day-to-day business operations, then De-

fendant could not qualify as Plaintiff's statutory employer under *Murphy,* despite the fact that USPS clearly meets all three parts of the *Bradley* test.

The answer to this question is unclear because the *Bradley* test was adopted to help implement and refine the *Murphy* "necessary and integral" test, but the *Murphy* test has never been overturned. "Rather than supplanting *Murphy,* the [Oklahoma Supreme Court] noted that 'Louisiana's more restrictive approach is harmonious with our own institutional design fashioned in *Murphy* and serves here as a sharp tool for implementing the *Murphy* standards.'" *Shackelford,* 998 P.2d at 648 (quoting *Bradley,* 804 P.2d at 428). *See also Izard,* 946 F.2d at 1495 (finding that "*Bradley* did not overrule clear past precedent—it did not specifically reverse any prior case—... *Bradley* is more a clarification of rather than a change in Oklahoma law"); *Van Zant,* 900 P.2d at 1010 n. 3 (finding that *Bradley* "modified" the necessary and integral test). None of these cases explicitly find that parties no longer have to meet the *Murphy* test. However, upon further analysis, the Court makes this determination for two reasons. First, the Oklahoma Supreme Court, the court responsible for both *Murphy* and *Bradley,* addressed the "necessary and integral" test in 1998 by examining only *Bradley,* with no reference to *Murphy* at all. *Parsley,* 962 P.2d at 1272. "We recently enunciated the test for determining § 11 'principal employer' status in *Bradley.*" *Id. See also Sweeney v. Roark,* 859 P.2d 1137, 1138 (Okla.App.1993) (determining Defendant was not a principal employer based on analysis of *Bradley* alone).

arily carried out by one in the hirer's line of business. The Court cannot agree with Defendant's argument. The entire test of *Murphy,* whether quoted in the first or second form, is referred to by courts as the "necessary and integral" test. That term does not apply simply to the first part of the first test. *See Bradley,* 804 P.2d at 427; *Newport v. Crane Serv., Inc.,* 649 P.2d 765, 766 (Okla. 1982); *Shackelford,* 998 P.2d at 648; *Powell v. Nortex Investigation Servs.,* 947 P.2d 614, 616 (Okla.Civ.App.1997).

*But see Powell v. Nortex Investigation Servs.,* 947 P.2d 614, 616 (Okla.Civ.App. 1997) (determining principal employer status based upon both *Murphy* and *Bradley* ). Secondly, "clarifying" the law and "modifying" *Murphy* speak more towards *Bradley* becoming the method by which *Murphy* is implemented rather than towards *Bradley* becoming an addition to the *Murphy* test. If *Bradley* is the "sharp tool" that the court adopted to implement and clarify *Murphy,* then it does not follow that the parties would have to satisfy both tests. Therefore, the Court will only examine the *Bradley* test to determine if USPS qualifies as Chimney Pointe's statutory employer.

■ In *Bradley,* the Oklahoma Supreme Court adopted a three-part analysis to help implement the "necessary and integral" test. *Bradley,* 804 P.2d at 427–28. *Bradley* focuses on the contract and the principal, rather than the individual worker. *Shackelford,* 998 P.2d at 649–50. The Tenth Circuit Court of Appeals described the *Bradley* test as follows:

> [I]n order to determine whether a principal is a statutory employer of a contractor's employees, a court must first inquire whether the contract work is specialized or nonspecialized. This inquiry takes into consideration whether the level of skill, training, and experience required to perform the work at issue is not ordinarily possessed by workers outside the contract field. If the contract work is specialized *per se,* it is not, as a matter of law, part of the principal's trade, business, or occupation.
>
> If the contract work is not specialized *per se,* the court must then compare the contract work with the principal's trade, business, or occupation to determine whether the contract work could be considered a part thereof. Finally, the court must inquire whether the principal

was actually engaged at the time of the injury in the trade, business, or occupation of the hired contractor.

*Izard,* 946 F.2d at 1494.

■ In applying this three-part analysis, "the proper focus is on the *agency* or *department* of the United States which contracted for the work." *Izard,* 946 F.2d at 1495. Therefore the Court will determine whether the USPS, as an entire agency, would qualify as the statutory or principal employer of Chimney Pointe. Beginning with whether the contract work was specialized or non-specialized, the Court finds that the contract work was non-specialized. In *Izard,* the Tenth Circuit Court of Appeals focused on whether the employees of the Department were fully capable of performing the work that the contractor was hired to perform. *Izard,* 946 F.2d at 1496. Here, Chimney Pointe was hired as a "Contract Postal Unit" to "provide[ ] selected postal services to the public."‘ As the USPS is statutorily obligated to provide postal services, its employees would clearly be fully capable of performing the work that Chimney Pointe, as a Contract Postal Unit, was hired to perform. *See* 39 U.S.C. § 101 (2002).

Since the contract work is not specialized *per se,* the Court must next compare the contract work with the principal's trade, business, or occupation to determine whether the contract work could be considered a part thereof. The Oklahoma Court of Civil Appeals found that "[o]ne of the factors in this analysis is the manner in which such work is normally performed in the hirer's trade or business, i.e., by employees or independent contractors." *Shackelford,* 998 P.2d at 648–49. The Louisiana Supreme Court provided a non-exhaustive list of guidelines to help resolve this second prong:

(1) Is the contract work routine and customary? That is, is it regular and predictable? Nonrecurring or extraordinary constructions and repairs usually are outside the scope of the statute. On the other hand, general maintenance and repair work, which by their very nature allow the smooth and continued operation of the principal, are within the scope of coverage.

(2) Does the principal have the equipment and/or manpower *capable* of performing the contract work? This is a sub-species of the specialty inquiry, *supra*. Here the primary focus is on determining whether the contract work as [sic] relates to the principal is handled ordinarily through employees.

(3) What is the practice in the industry relative to the contract work? Do industry participants normally contract out this type of work or do they have their own employees perform the work?

*Berry*, 488 So.2d at 938 (citations omitted). Here, the work of the USPS is normally done by employees of the USPS, rather than by independent contractors. The postal services provided by Chimney Pointe are also routine, customary, and recurring for the USPS, and are thus part of the USPS' trade, business, or occupation.

Finally, the Court examines "whether the principal hirer was engaged, at the time of the injury, in the trade or occupation of the hired contractor. If the task performed by the independent contractor is beyond the skill, training, expertise or capability of the hirer's employees, it must be regarded as beyond the scope of the hirer's regular ... activities." *Parsley*, 962 P.2d at 1272. The Oklahoma Court of Civil Appeals framed the inquiry as "whether the hirer was actually engaged in performing work similar to that being performed by the hired contractor." *Shackelford*, 998 P.2d at 649. There can be no

doubt that the USPS was engaged in the work of postal services at the time of the injury. Therefore Defendant satisfies all three prongs of the *Bradley* test.

Plaintiff additionally argues that Defendant is not Plaintiff's statutory employer because "[i]f the government is found to be the statutory employer of Plaintiff, then they are potentially liable to all employees of [Chimney Pointe] in workers' compensation in the event that [Chimney Pointe] failed to secure workers compensation coverage." The Court finds that the issue of Defendant's potential liability to all employees of Chimney Pointe is not before the Court because Chimney Pointe did secure workers' compensation coverage, under which Plaintiff recovered. Additionally, the Court does not necessarily agree that Defendant is potentially liable to all employees of Chimney Pointe. The Oklahoma Supreme Court found, "[a] hirer who occupies the principal employer's status ... is primarily liable in compensation to his immediate employees and secondarily accountable to the employees of all of his contractors *through whom the day-to-day activities of the hirer's own business are being performed.*" *Newport v. Crane Serv., Inc.*, 649 P.2d 765, 767 (Okla.1982) (emphasis added). It would follow, then, that as all employees of Chimney Pointe were not performing the day-to-day activities of the USPS' business, the USPS would not necessarily have been secondarily accountable to all of these employees.

### Conclusion

Because Defendant satisfies the requirements of the *Bradley* test, it qualifies as Chimney Pointe's intermediate or principal employer. As such, Defendant is protected from recovery under all but the Workers' Compensation Act. *See* 85 O.S. § 12 (2003); *Izard*, 946 F.2d at 1494 (10th Cir. 1991); *Shackelford*, 998 P.2d at 648; *Pars-*

*ley,* 962 P.2d at 1271; and *Stacy,* 809 P.2d at 1316. As Plaintiff has already recovered worker's compensation benefits from Chimney Pointe, his remedies against Defendant are exhausted, and this Court does not have subject matter jurisdiction over this case under 28 U.S.C. § 1346.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is GRANTED.